The next case called for oral argument is Johnson v. Moore, and you may proceed as you wish. Good morning. May it please the Senate Court, Mr. Carr, I'm Robert Howerton, with the paid, and I represent James R. Johnson, the plaintiff. In this case, there is a workers' compensation lien. The amount that has been paid exceeds the amount of a personal injury recovery throughout the same incident. Therefore, there is no issue in this case about calculation of future amounts or calculation of the amount of the credit, any credit, the employer may have against future payments. The issue is confined very cleanly to where we are. The statute that is involved is in my brief two ways, one verbatim, one paraphrased, and I've taken the liberty to provide to you the kernel, the essence, which is the idea of the statute, 5B, which says the third-party recovery, the employer pays as its share of the attorney's fees, 25 percent of the amount the employer is paying. The phrase, as its share of attorney's fees, is the essence of 5B, and we find it in the cases, the very first cases that construe 5B when it says, look, here is the purpose of the statute. It is to share the attorney's fees incurred by the plaintiff between the plaintiff himself and the employer, who also will be repaid on the lien. Now, I want to give some examples about how distribution is made in these cases. The reason that I'm doing it is I've read a lot of cases, and it looks as if some courts are thinking that you write a whole bunch of different checks, which is possible. But in effect, in a court recovery with a lien, you have a pot. The pot is either the lawyer's trust fund or the pot is the amount that is taken before the court with a petition to adjudicate the liens. But either way, it is a pot. Now, let's examine, let's imagine that we have a $3,000 recovery. So the personal injury recovery goes into the pot. The lawyer's contract, we will assume, is a one-third, I digress a minute, I'm ignoring cost for clarity. The lawyer is paid his one-third, which is $1,000. Let's assume the lien is $1,000. From the fund, the lien holder is paid in full the $1,000. But the lien holder, according to 5B, has to pay 25% of that, which is usually accomplished. You don't have to trade checks. You can simply leave the 250 in the fund. Because leaving it at the fund is the same thing as paying 1,000 and have the employer write back into the fund the 25%. The employer now has $750, and there is now left in the fund the sum of $1,000 plus $250. The lawyer is fully paid. He can't take any more money. He contracted for a third-party recovery for a third, and he got his third. He didn't get a penny of what the employer's share is. But the recovery that's left is the $1,000 from the TORC feeser and the $250, which has either been paid back into the fund or left in the fund, which is the employer's share, and the employee gets that. Now let's assume a different case. Let's assume a $3,000 recovery, but let's assume a $6,000 worker's complaint. He's got a $6,000 lien. I'm the lawyer. She's my client. I only got $3,000 for you. What happens? If you follow the same procedure, which has been court-approved, when the recovery is larger than the lien, then here's what happens. The lawyer takes the contract price, $1,000. The lien is $6,000. That's more than the $2,000 that's left in the fund. The employer gets it all because the lien is larger than what's left in the pot. But the lawyer pays one-fourth, 25% of that as its share of the attorney's fees, either by taking and writing back the check or simply the court deducting that amount from the amount that's in the fund, which is $500. The lien holder gets $1,500. The lawyer's been fully paid. The $500, which is the employer's share of the attorney's fees, goes to the plaintiff, the employee. Dirks operates this way. Dirks says if there's a $3,000 recovery and the lien is $6,000, the lien holder gets it all. And that's the Supreme Court of Illinois's decision. And I'm explaining why that is wrong and why if they got the chance to realize it – I'm sorry. First, they should get a chance to realize they're wrong. And secondly, if they think they are, they need to modify it for the reasons that I've said. But you're asking us to modify it. I'm sorry? You're asking us to modify it. Well, I've got to ask somebody to modify it. And that's a good question. What I either want you to do is to rule for me or if you feel compelled to write a decision against me, you need to make it clear the reasons why Dirks is wrong, your recognition that it is wrong. But even though it is wrong long, it has to be upheld. One of the two. That's what I'm asking. Dirks, $3,000 in the recovery. The lawyer gets nothing. The lien holder gets all of it and pays 25%, which is $750 to the lawyer. And the lawyer pays $750. The lien holder gets the balance, $2,250, but there's nothing left in the pot. Not a thing. Now, this shows, Dirks itself shows the fallacy of its logic. Because the purpose of this statute is that the employer is to pay, in my last example, one-fourth of $3,750 to the lawyer. But if you recall, all of the pot was taken out. There were no attorney's fees on the pot. There were zero attorney's fees paid by the plaintiff. Therefore, if there are no attorney's fees, there are none that can be paid, should be paid by the employer, because they don't owe any under the statute. So what has happened is the court has not really interpreted 5B, but has made up some sort of a rule on its own, when in fact it is constrained and has only the authority to follow the command of the legislature. 5B says nothing whatsoever about the attorney's fees. Now, in this particular case, I have an attorney fee contract for 25%. If I win this case, I still get 25%. If I lose this case, I get 25%. I chose it on purpose. I chose it to show you that the issue has nothing to do with what the lawyer gets. The sole issue that is at stake is what does the plaintiff get? And that really is what I'm trying to point out. It's about attorney's fees only in the instance that it is a share of attorney's fees. And that language has come through the opinions. I've written myself, and I've written Brees, and I know how hard it is to write accurately what you mean, but I think that that language was never meant. The Supreme Court addressed this concern about Section 5B when it was enacted, but yet found that the result was still what they said it was at Dirks. I mean, I understand that you want us to modify it. The only thing I can find different in Dirks is that there, the plaintiff's attorney wanted two fees, one from the client and one from the employer. What happened in that case is the lawyer wanted the one-third fee on the tort recovery that was in the pot, and when the employer paid its share of the attorney's fees, the lawyer wanted to pocket that. The issue that I'm presenting, and I read the briefs, and I ask you to read the briefs, was really never really addressed. The Supreme Court never got to consider what I'm saying. And here's another problem. To follow up on what you say, they say in that something that sounds good on its surface, but if you think about it, it doesn't. And that is if the lawyer on the tort fee wants the 33 and a third percent, then he can charge the client eight and a third percent and get the rest of his fee. Well, number one, it doesn't work that way in practice because clients usually don't have that kind of money. Number two, here's what the offer is. The client now legally owes the lawyer eight and one-third percent. There's no funds to collect it from the tort recovery, but in many cases there will be funds. And it will be the future, at least the future, if not present or on adjudication of PPD, permanent partial disability, additional money that will come from the employer. So the lawyer can actually then attach that eight and a third percent from what the employer will pay in continued workers' compensation, and look what happens. What they have done is they have said to the client, not only do you not get anything from the tort recovery, but you've got to pay the employer eight and a third percent to boot, because in effect that's what's going on. And that's the problem. The other problem, I said to Matt, and I realize, and that really is in a judicial way, looking at it strictly judicially, that's the problem that is confronting this court. Apologize. I raised it. But it is a problem. It's a problem in the law. And it needs, in my judgment, to be corrected. If courts disagree, I've had my say. What more can I do? I can't do anything other than to bring it to people's attention. But here's why Dirks is wrong. I said that in the brief. I don't have much time. I didn't want to talk too long. But I enjoy the questions, by the way. It's very helpful to me as a lawyer. But Dirks is wrong, as I point out in my brief, because it raises unintended ethical problems. The ethical problem doesn't arise in this case, and by the way, there may be many small cases, but the money can be immense in these cases. Or it is to me. It may not be to somebody else. But you could easily have, in this case, you could have had a million-dollar personal injury liability policy on the car that rear-ended my client. And he could have had catastrophic injuries and drawn comp that far exceeded a million dollars. If Dirks and the law stands, every lawyer worth his or her salt knows when the client comes in, I've got to tell her, I know that you've got a lawsuit, there's a million dollars out there, but I can't really recover a penny. Can't do anything. Isn't that what an ethical lawyer would do? Sometimes you don't do that, not out of ethics, but it turns out that way. In the best of circumstances, you think you can do something, but you can't. Every lawyer's had that experience, and now I'm sitting down with her, and what am I going to do? I can pocket an easy $250,000 because store fees are going to pay off. I'll send them a demand letter, a bad faith letter. They pay a million dollars, the employer pays me $250,000, and I tell her, thank you very much for your business. And who am I really working for? Yes, essentially I'm working for myself. That argument was never presented to the court. The court never considered that. If you look at the whole series of briefs, they never looked at it. And I'm not complaining about the court. The court can only really in a large way consider what's brought to them, and the lawyers live with these cases, and they ought to be adept enough to raise the issues that need to be raised to assist the court. The court is really hamstrung. And the next thing is it judicially amends 5B. And it amends 5B, and I think that should be pointed out, because 5B does not in any way justify the result in Dirks. Dirks can't in any way follow 5B and come to the result. Why is that important? Well, you know something, we were talking about this in my office yesterday. Let the Supreme Court do whatever they want to. Well, what's anybody going to do about it? Nothing. Makes no difference. But still, in this country, there is a reason to limit the power of the executive, to limit the power of the legislature, to limit the power of the judiciary. And judicial amendment of a clear command of the statute steps outside that role. And I think they did it completely unintentionally. They really didn't understand, if I'm right, if I'm right, that they didn't really consider and understand. The next thing is, in my brief I point out, Dirks is out of the mainstream of the law. That's the purpose of my appendix. Illinois could have chosen various methods. They could have said, as some states say, the employer of the paper doesn't share any of the proof. They could have done whatever they wanted to do. But the fact of the matter is this, at least according to my research, which could be wrong. Illinois is the only state in the union that says if the lien is greater than the recovery, the lawyer can't collect a fee on the recovery at all and is limited to 25%. Explicitly, in every other state, the lawyer takes the fee first, the contract price, because the courts have realized that it's not about the attorney fee. In reality, even though they say it's equitable, the fact of the matter is they've done the mathematics and they know that's the only way the client can ever get anything under our form. Now, you could have a form like Arizona says you collect it and we get it all, but Illinois didn't do that. The federal government enacted a statute, and under federal law they explicitly made clear that no matter the ratio of the lien to the recovery, the employee, the worker, the plaintiff in the tort case, must get a portion. Why? Two reasons. One, to give the worker an incentive to assist the employer in collection. And secondly, to avoid a conflict of interest that I've pointed out here between me and my client who sits there that is caused by dirts. The next reason is there's no precedential support. You know, I wrote that, and my fellow lawyer back there said, you know, I really didn't like that part, and the reason I didn't is because there was a lot of words, and that's where I go back and look at each of the cases that Dirk cites. A lot of hard work. I read every case. The cases that construe the statute by saying the interest is full indemnification, that comes out of a prior statute where the employer had the right to sue. The employee, the employer sued the tortfeasor to collect his lien and hold the amount in trust for the employee, and under that scheme they said the employee can only get any of that money if there's an excess. But nowhere did it say the lawyer didn't get it. And then next, not only does that work, not work in our present scheme, the cases that said if the lien is larger than the recovery, the employer gets it all, simply said it. Time passes. Thank you very much. Thank you. Give me just a minute to get this out of his way. May it please this honorable court, Judge Howerton. My name is Michael Carr, and I represent the city of Harrisburg, Intervenor Below, and the appellee here in this case. First, I just want to get a little housekeeping out of the way. As pointed out by the circuit court, Judge Howerton and Your Honor, the 2000 Illinois Supreme Court case of In re Dirkis is directly on point and should control the outcome of this case. Plaintiff acknowledges this control, arguing for a modification of Dirkis, but at no time has he argued that Dirkis doesn't apply here, because if he had, what would be the point of arguing for a modification? As Dirkis, a Supreme Court case, has already decided the law with respect to the issues in this case, the circuit court did not err in following it, and as an intermediate court of appeal, this court should likewise follow that decision. Despite that, I do want to address Appellant's argument. I'm not as eloquent as Judge Howerton, but I'm going to try to simplify this as much as I can. Behind all the arguments and prose, what is Appellant upset about? What's the issue? As Judge Howerton pointed out, it's this. Appellant is upset because he receives nothing from the third-party tort case under the circuit court's order. But the question is really this. Is Plaintiff actually entitled to anything from the tort case? The facts are these. Plaintiff was injured by a third-party in the course and scope of his employment. This single accident gave rise to two courses of action, a work-off case against the employer by operation of statute and a civil tort action. Overall, the third party is the true offending party. The employer's obligation arises by obligation of statute. In effect, they're a neutral party to the whole case. Yet, Plaintiff received and is receiving monies from the employer under workers' compensation. By operation of the same statute that gave rise to the workers' compensation case, employer in paying benefits is building up a lien on any third-party recovery. This is a logical and equitable outcome. As an innocent party to the accident, employer should be made whole as much as possible. This is the basis of subrogation and is enshrined in Section 5B of the Act. What's the incentive for the employee to file that third-party action? The employee may not have an incentive to file a third-party action. Just because a cause of action is available doesn't mean that a plaintiff has to avail himself of it. I don't think anyone's arguing that. Do you think that the legislature in enacting 5B contemplated a system by which the employee would have no incentive to file a third-party action when they established a means of fee sharing in 5B? I think they understood that an employee injured in a workers' compensation case is not entitled to a double recovery. The way that subrogation, at least as far as I understand it, to work and the way that the ILCE indicates in a piece written by Mr. Myerford in 2004, cautions plaintiff's attorneys against the possibility of taking two fees. The way that that lays out subrogation is this. The example in the ILCE is this. You have a $57,000 workers' compensation lien, $7,000 paid out in medical, $50,000 paid out for permanent partial disability. The civil case settles for $125,000. The way that it lays it out is $57,000 of the $125,000 goes straight to the employer in satisfaction of its subrogation lien. The employee isn't entitled to that $57,000. He doesn't have a right to it. The employer with a lien on that money has first right to that money. Because they have received $57,000, the state recognized that they should pay something to get it. They shouldn't get something for nothing. So that's why they pay 25%. The second paragraph of Section 5B recognizes that. Then the, from the amount that's remaining, that goes to the plaintiff who then pays his attorney whatever the contractual fee was, be it one-third or 25% as it is in this case, because he received money from the tort case. I think we understand the formula. Here's what I'm concerned about, which Judge Goldenhurst has raised. Has anybody looked at the legislative intent of 5B to see debates, what was intended that may be beyond what Dirks has applied to the 5B interpretation? And I'll ask Judge Howerton the same question. I mean, do we have anything? Because, I mean, obviously, this Court feels compelled to follow the Supreme Court, just like everybody does. All right? But Judge Howerton has asked us to modify it, and if we don't modify it, to at least point out where we think the errors are. And it would have to come to, from me, from my perspective, it would have to come from interpreting the legislative history. What did 5B, what was 5B intended to do for these types of liens? If you haven't seen it, you know, you haven't seen it. Okay? As far as I, I mean, I haven't looked at the debates. I don't know what the legislative, full legislative intent was beyond creating a subrogation lien for the employer and then amending it in 1957 to provide that the employer can't get something for nothing and has to pay 25% of their recovery. Because Dirk says there is nothing in the statute that suggests a limitation on the employee's obligation of reimbursement. That's correct. The statute on its face, that's what it says. But I'm wondering if we've interpreted it correctly. So I've asked the question. I'm going back to my argument. In this case, the third-party tort case is settled. Unfortunately, it's settling for an amount less than the employer's subrogation lien. That third-party recovery, what Appellant refers to as the tort recovery fund, would be a double recovery if paid fully to the plaintiff. This is because the plaintiff has already received sums equal to this amount from workers' compensation from the same injuries sustained in the same accident. It's inequitable for any plaintiff to receive a double recovery. This is why the employer has the subrogation lien. Therefore, the employer has a right to the full amount of settlement. The plaintiff gets nothing from the third-party tort case and therefore owes no attorney's fees. What can the employer do if, say, this plaintiff had come into Judge Howard's office and had Dirk explain to him and decided, well, this is insane. I'll be happy to pay you whatever your hourly rate is for discussing this with me. But I'm not foolish enough to go through litigation to establish this just on behalf of my employer, who happens, honestly, correctly, to be paying me my disability, my workers' comp payments and paying them on time. What can the employer do? What position does that put the employer in when the employee has absolutely no incentive to go after the third-party? It's the position the employer has. I suppose because they have a subrogation lien, they can file a case in civil court on behalf of the injured worker to collect any money that is owed them through the payment of their benefits and anything that they would receive under workers' compensation or through the civil case. But they would only have to pay 25 percent of it to an attorney acting on behalf of the employee or the employee's state for anything he did to increase it. They'd have to file themselves. Because the employee would say, you know, you subpoenaed me, obviously I'm going to testify. I'm going to follow a subpoena, but I'm not idiot enough to file this on my own. And that's the way civil law works. Sometimes an attorney is presented with a case, they take a look at it, and they say, you know, I'm not going to be able to get you anything here.  That's just the reality of practicing law. I don't, in looking at it, I would imagine that the legislature probably didn't think it all the way through. From my reading of Larson's and the Act, they probably always envisioned that you would get more from the third-party case than you would from the workers' compensation case. But if you want to have a uniform application of 5B, it has to produce the result that Dirk has produced. To do otherwise would violate the practice guides and the way that subrogation is set up. The money goes to the employee first, then it goes to the employee. The employee pays his share of attorney's fees based on what he got. And then that attorney takes 25% pursuant to the statute from the employer who has to pay it pursuant to the statute. The statute doesn't call it an attorney's fee. At no point does it call it that. It's simply a recognition of, you didn't do anything to earn this money, we're going to give it to the attorney who did something to get you your money. But it never calls it an attorney's fee. Appellant, wishing to get something out of the court case, asks this court to turn this whole system that I've described on its head. Appellant appears to argue he has a prevailing right to the third-party court money, above that of the employer who has a lien on that money. Because Plaintiff's right is prevailing, so their argument goes, Plaintiff has received money, and pursuant to his contract with his attorney, attorney is entitled to a fee on the money he's collected from Plaintiff. But that turns, as I pointed out earlier, the whole operation of segregation on its head. Even in cases where the work comp lien is smaller than the third-party court recovery, the ILC cautions Plaintiff's attorneys that they are not to take a fee on the whole third-party recovery, only on the part their client is entitled to. Essentially, Appellant is arguing to obtain a fee on money his client isn't legally entitled to in the first place. From the amount of the fund left over, Appellant then wants to take the 25 percent Section 5B gives him as a right to, and have that paid to his client. But as I mentioned before, look at the language of Section 5B. It speaks nothing of payment to the Plaintiff, but states, shall pay such attorney. It's nice that Judge Howerton would pay this to his client, but there's nothing to force a very much less scrupulous attorney to do the same. If you take the approach recommended by Judge Howerton today, essentially you're allowing an attorney to take two fees. The Supreme Court in Dergis recognized this and shot that down. What's the end result if you take Appellant's approach? Plaintiff is only getting $4,755 as a result of his case, yet paid his attorney $5,000 in attorney's fees, 25 percent of the $20,000. Employer is being blocked from being made whole on two occasions. First, by Plaintiff's payment of attorney's fees, and again by paying the statutory 25 percent. This is in spite of the fact that, as the Supreme Court pointed out in Dergis, there's only one set-off in the Act. If the legislature had intended there to be more set-offs, they would have supplied them. Plaintiff has now received workers' compensation benefits and money from his tort case for injuries arising from the same accident, a double recovery in direct contravention to the Workers' Compensation Act. How can that be more logical or equitable than the approach recommended by the Supreme Court in Dergis and ordered by the Circuit Court in this case? It can't. Addressing the ethical problems in this case, the Supreme Court in Dergis did address the ethical problem raised in this case. The appellant in that case  argued that the interpretation of Section 5B of the Act would destroy attorney-client relationship between an employee and employee's attorney. That law firm asserted that such a holding imposes on the attorney a duty to represent the employer. The Supreme Court saw that, analyzed it, looked at it, and cited to the appellate court in Page reasoning, it is readily apparent that employees' attorneys will often represent interests which are somewhat different than the interests of employers in cases such as this, and we believe the language of Section 5B of the Act countenances such a situation. With respect to the imbalances in the law, it doesn't matter how all other jurisdictions handle this subrogation process. This is the way the Illinois legislature has drafted the law. This is the way they intended to have it carried out. The legislature is imputed to know the law. If they wanted to change it, legislatively change the result of Dergis, they could have done so. There's no evidence that they've ever considered it or planned to do that. They could do it if they wanted to. The changes that appellant is seeking in this case are changes that would have to be addressed to the legislature, not the courts. The courts can only follow what the legislature has provided them with. In this case, we're provided with Section 5B. Therefore, appellees would ask this honorable court to affirm the circuit court's decision. If there are no more questions, I thank you for your time today. Can the employer bring their own action in their own name to enforce their lien? Well, the employer, whether it's in their own name or not, can in fact enforce the lien. Effectively, of course, you have the question of who's really the named plaintiff. And the plaintiff is, I guess, under the law, be obliged. The general question that you're asking is, yes, that's true. But that doesn't answer anything. The reason it doesn't answer anything is, well, okay, well, suppose we just say the employer can do it himself. Well, that's true. The problem is back to the ethical problems. The employer is going to want, I'll start this way, the test of the worker's compensation recovery is nature and extent of the injury. The employer will want to get its lien, doesn't care if it gets any more for the employee. All it's interested in is just, I want my money. The employer, on the other hand, will want to minimize the nature and extent. So it's to minimize the extent of compensation that it may owe, either presently or in the future. And so simply to say, well, the employer could do it himself, of course they can. But you need to recognize what really, in effect, is going on. In answer to your question, Justice Weston, is I looked at the legislative intent. There aren't any real debates. There's no statement that says, here's what we mean. But if you were to do one yourself, you would see the context of the amendment. The amendment comes in the context of preexisting law, where the employer did not pay anything of the plaintiff's attorney's fees at all. There was no check. In my example, if the lien was $1,000, they got $1,000. The plaintiff paid $1,000. The employer paid no check. It's in that context that the amendment came. Secondly, although the legislative history in the debates doesn't reveal it, but the context of the amendments will make it clear what's going on, the Supreme Court itself said, here's the legislative intent, cited to my page 14 of my brief, Trino v. Maryland, and it says explicitly the intent of the legislature was to have the employer pay a share of the employee's attorney's fees. Now, the last points, I mean, that was made is the first thing that he said was, is the plaintiff really entitled to anything? And it ties together with a later point he made that the system is fair if the recovery is less than the lien, because the employee didn't get anything. You remember my example, the lien's $6,000. The employee didn't get anything at all. As a matter of fact, whether you use the attorney fee being honored and paid, in which case the client gets something, or not, the employee gets nothing. Either what. But the subtlety of that argument and the error of it is this. He is using it in a context that really means this. If the employer gets the entire recovery, then the employee doesn't get anything and owes no attorney's fees. Look at the predicate. If the employer gets it all, that's the very issue that I'm raising. And so to that extent, it just doesn't really guide any analysis of the problem that confronts the court. You try to claim that Dirks holds that 5B cannot apply to a case where the lien is greater than the recovery, but that's the exact language that they used in Dirks. I did not hear you. Dirks, in your brief, you say 5B neither states nor implies that 5B cannot apply to a case where the lien is greater than the recovery. 5B does not apply to this case. So you're saying 5B doesn't say it, not that Dirks doesn't say it. That's right. 5B does not say it. 5B is a universal statute that is put out there to apply to all cases. But that's the deformation of the law by Dirks. Because Dirks is saying, well, sometimes it does and sometimes it doesn't. Go ahead. And the problem that also I want to address is the possibility of taking two fees. If you use the method that has been approved in the cases I've cited and the method that I've outlined here to you, there is no possibility. To the extent that I am charged with wanting two fees, I am too opaque to understand. We appreciate the briefs and arguments of counsel.